UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 12-56678

HEIDI L. BRINKLEY,                                  Chapter 13

        Debtor.                                  Judge Thomas J. Tucker
_____/

**OPINION REGARDING VALUE OF DEBTOR'S SPINNAKER LANE PROPERTY
FOR CRAMDOWN PURPOSES
UNDER DEBTOR'S PROPOSED CHAPTER 13 PLAN**

**I. Introduction**

    The Debtor in this Chapter 13 case, Heidi L. Brinkley, filed her bankruptcy petition on July 16, 2012, and filed a Chapter 13 plan on July 30, 2012.[1] Debtor later amended her plan, five times.[2] The most recent amended plan was filed on January 15, 2014 (the "Plan").[3]

    Most recently, this case came before the Court on March 17, 2014, for an evidentiary hearing, on an objection to confirmation by EverBank.[4] EverBank claims that Debtor owes it at least $138,206.62.[5] EverBank's claim is secured by a first mortgage on Plaintiff's rental property, a condominium located at 3304 Spinnaker Lane, #25, Detroit, Michigan (the "Property"). Debtor's Plan proposes to treat Everbank's secured claim, in Class Five, by allowing and paying a secured claim in the amount of $49,000.00, which Debtor contends is the value of the Property, plus interest thereon at the rate of 3%, by making monthly payments over

---

[1] Docket # 22.

[2] Docket ## 52, 55, 141, 205, 225.

[3] Docket # 225.

[4] *See, e.g.,* Docket # 231.

[5] *Id.* at ¶ 8.

the life of Debtor's 60 month Plan.[6] The Plan proposes to treat the balance of EverBank's claim as unsecured, and as all with other general unsecured claims in Class Eight, by paying a minimum dividend of 0% of the allowed claim, with no interest, over the life of the 60-month Plan.[7]

EverBank objects to this treatment, arguing that the Property has a value of $66,000.00, so that EverBank's secured claim that must be paid under Class Five is $66,000.00, not the $49,000.00 proposed by Debtor.

The Court held an evidentiary hearing on March 17, 2014, to determine the value of the Property. This opinion states the Court's findings of fact and conclusions of law regarding that subject.

The parties agree that for purposes of Debtor's Plan, the Debtor may bifurcate EverBank's claim, under 11 U.S.C. §§ 506(a)(1) and 1325(a)(5)(B)(ii), such that EverBank's allowed secured claim will be the value of the Property (EverBank's collateral) as of the bankruptcy petition date, and the balance of EverBank's total claim will be treated as an unsecured claim.

As the issue has been framed by the parties, Debtor had the burden at the evidentiary hearing of proving, by a preponderance of the evidence, that the value of the Property as of the July 16, 2012 petition date was $49,000.00 or less. Further, if Debtor did not meet that burden, then the Court must determine what the value of the Property was, as of the petition date. This is

---

[6] Plan (Docket # 225) at 3.

[7] *See id.* at 4 (under "Class Eight"), under which "General Unsecured Claims" will be paid a minimum dividend of 0%, or whatever dividend results from the Plan continuing for its full 60 month length, whichever is greater.

2

necessary so that the parties will know, prior to the confirmation hearing date,[8] the amount of EverBank's secured claim that must be paid under Class Five of Debtor's Plan, if Debtor is to retain the Property rather than surrender it.

## II. Jurisdiction

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(K), 157(b)(2)(L), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code §§ 506(a)(1) and 1325(a)(5)(B)(ii). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Discussion

The Court begins by noting that in the absence of any recent, actual arms-length sale of the Property, determining the value of the Property is not something that can be done with any sort of scientific precision or certainty. It necessarily involves some uncertainty. But the Plaintiff need not prove the value of the Property with certainty, or beyond a reasonable doubt.

---

[8] Currently an adjourned confirmation hearing in this case is scheduled for March 27, 2014 at 11:00 a.m.

She merely needs to prove it by a preponderance of the evidence.

The Court has considered all of the arguments and evidence presented at the evidentiary hearing. The evidence consisted of Debtor's Exhibit 1 and Creditor's Exhibit A; and the testimony of three witnesses: the Debtor herself; Debtor's appraiser, Georgetta Crook; and EverBank's appraiser, Heidi Sampson.

Based on the evidence presented, the Court finds and concludes that the Debtor has not met her burden of proof, and that as of the July 16, 2012 petition date, the value of the Property was more than $49,000.00 (and therefore more than what Debtor's Plan proposes to pay on EverBank's secured claim). The Court further finds that the value of the Property as of the petition date was $55,000.00.

In making its findings and conclusions about the value of the Property, the Court has carefully considered the testimony of the each party's appraiser, and the detailed appraisal reports of each party's appraiser (Debtor's Exhibit 1 and Creditor's Exhibit A). Each appraiser used the same basic method for appraising the Property — each used the sales comparison approach. Debtor's appraiser Georgetta Crook opined in her report that the value of the Property was $49,000.00 as of July 31, 2012, the effective date of her appraisal. EverBank's appraiser Heidi Sampson opined in her report that the value of the Property was $66,000.00 as of September 5, 2012, the effective date of her appraisal.

To support their opinions, each appraiser presented detailed information in her report about several sales that occurred during 2012, of comparable other properties in the vicinity of the subject Property. As to each such comparable sale, each appraiser took the sale price of the property and made any necessary upward or downward adjustments to the sale price, to account

4

12-56678-tjt    Doc 244    Filed 03/22/14    Entered 03/22/14 12:11:21    Page 4 of 8

for differences between the comparable property and the Property at issue in this case. For each comparable, that exercise yielded an adjusted sale price, which then was considered in determining the value of the subject Property.

The table on the next page of this opinion lists the sale price and adjusted sale price listed in each appraisal report, and limited other information, for each comparable sale used by the appraisers in this case.[9] There was one comparable sale that was used by both of the appraisers, "Sale 1" listed in the table below. The following table also shows, in the far-right column, the Court's comments regarding changes to the numbers that EverBank's appraiser, Ms. Sampson, admitted must be made to some of the adjustments she made in her report, to reach an "adjusted sale price" number for her comparable sales, Sale 1, 2, and 3.[10]

---

[9] This table does not list the four properties in Ms. Sampson's report that were merely properties listed for sale, rather than an actual sale that had occurred. These are listed in Creditor's Ex. A as "Comparable Sale # 5" and as "Listing # 1," "Listing # 2," and "Listing # 3. The Court has disregarded the evidence about those properties, because they merely involved an owner's asking price, rather than an actual sale of a property.

In addition, the table does not list all of the specific adjustments or other information in the appraisal reports about the comparable sales/properties, although the Court considered all such information in making its decision.

[10] Ms. Sampson admitted on cross-examination that she made several errors in her report, in listing her adjustments to her Comparable Sale nos. 1, 2, and 3, in reaching an adjusted sale price for each property. According to her testimony, there were five places in her list of adjustments where a *positive* $2,000.00 adjustment should have been a *negative* $2,000.00. These errors were in the adjustment for "View" for each of Sale nos. 1, 2 and 3; and in the adjustments for the Homeowners Association monthly assessments ("HOA Mo. Assessment") for Sale nos. 2 and 3. Each such error caused a net swing of $4,000.00 in the total adjustments for the given property. The Court has calculated the effect of correcting these five admitted errors by Ms. Sampson, in the far right-hand column of the Court's table.

| Georgetta Crook | | | Heidi Sampson | | | Comments: | |
|---|---|---|---|---|---|---|---|
| **Debtor's appraiser (DX-1)** | | | **Creditor Everbank's appraiser (CX-A)** | | | | |
| opinion of value: $49,000 | | | opinion of value: $66,000 | | | | |
| Comps: | | | Comps: | | | | |
| | | | | | | | |
| Sale 1 (same property as Sampson's Sale 1) | | | Sale 1 (same property as Crook's Sale 1) | | | | |
| 274 Main Sail Ct #27 | | | 274 Main Sale Ct #27 | | | | |
| Detroit MI | | | Detroit MI | | | | |
| | | | | | | admitted change to net adjustments makes it $11,100, | |
| sale price | | $51,000 | sale price | | $51,000 | i.e., $4,000 less | |
| date of sale | 6/12 | | date of sale | 6/12 | | so adj. sale price should be: | |
| adjusted sale price | | **$51,000** | adjusted sale price | | **$66,100** | | **$62,100** |
| | | | | | | | |
| Sale 2 | | | Sale 2 | | | | |
| 2005 Hyde Park Rd #00 | | | 1701 Campau Farms Cir #33 | | | | |
| Detroit MI | | | Detroit MI | | | | |
| | | | | | | admitted change to net adjustments makes it $3,400, | |
| sale price | | $46,000 | sale price | | $48,000 | i.e., $8,000 less | |
| date of sale | 7/12 | | date of sale | 8/12 | | so adj. sale price should be: | |
| adjusted sale price | | **$44,000** | adjusted sale price | | **$59,400** | | **$51,400** |
| | | | | | | | |
| Sale 3 | | | Sale 3 | | | | |
| 6533 E Jefferson # 58 | | | 1749 Campau Farms Cir #48 | | | | |
| Detroit MI | | | Detroit MI | | | | |
| | | | | | | admitted change to net adjustments makes it $400, i.e., | |
| sale price | | $68,000 | sale price | | $52,701 | $8,000 less | |
| date of sale | 10/12 | | date of sale | 5/12 | | so adj. sale price should be: | |
| adjusted sale price | | **$67,450** | adjusted sale price | | **$61,101** | | **$53,101** |
| | | | | | | | |
| | | | Sale 4 | | | | |
| | | | 6533 E Jefferson Ave #125 | | | | |
| | | | Detroit MI | | | | |
| | | | sale price | | $78,000 | | |
| | | | date of sale | 4/12 | | | |
| | | | adjusted sale price | | **$75,200** | | |

In considering these comparable sales, the Court notes the following.  First, the Court finds that Ms. Sampson's "Sale 4" property is not sufficiently comparable to Debtor's Property, to make it a reliable indicator of the value of Debtor's Property, even with adjustments.  The "Sale 4" property is quite different from the Debtor's Property, including the facts that it has a view of the river and is a loft.  So the Court disregards Sale 4 entirely in determining the value of Debtor's subject Property.

Second, the average adjusted sale price of the three comparable sales used by Debtor's appraiser, Ms. Crook, is $54,150.00.  That number, of course, substantially exceeds the $49,000.00 value that Debtor has alleged for the Property.  And while Ms. Crook testified that she thinks that her "Sale 1" property, with an adjusted sale price of $51,000.00, should be weighted more heavily than her other two comparable sales in reaching an appraised value for the subject property (70% for Sale 1, 15% each for Sales 2 and 3), the Court does not find this testimony persuasive.  Ms. Sampson also testified that she now thinks that the same sale — *i.e.*, *her* comparable Sale 1, which has an adjusted sale price of $62,100.00 — should be weighted more heavily among her four comparable sales, but the Court does not find that testimony persuasive either, and notes that in her report Ms. Sampson stated that she weighted all her comparable sales equally in reaching an appraised value for the Debtor's subject property.[11]

Third, the Court finds that the five properties used in the two appraisal reports (Crook's Sales 1-3 and Sampson's Sales 1-3 (Sale 1 being common to both reports)) all are sufficiently comparable to Debtor's Property to make them reliable indicators of the value of Debtor's Property.  And the sale dates for these five properties, ranging from May through October 2012,

---

[11] *See* Creditor's Ex. A, third page.

were all close enough in time to the petition date in this case (July 16, 2012) to make the sales probative of value as of the petition date. (In this regard, it does not matter that two of the sales were closed after July 16, 2012, in August and October 2012).

Fourth, the average adjusted sale price of the three comparable sales used by EverBank's appraiser, Ms. Sampson, is $55,534.00.[12] That number, of course, is far less than the $66,000.00 value advocated by EverBank for Debtor's Property. But it substantially exceeds the $49,000.00 value that Debtor has alleged for the Property. The average adjusted sale prices of the three comparable sales (Sales 1-3) for each of the appraisers are remarkably close: as stated above, Debtor's average is $54,150.00, while EverBank's average is $55,534.00.

While this opinion will not discuss all of the evidence presented at the evidentiary hearing, the Court has considered all of that evidence, in both the exhibits and the testimony at the evidentiary hearing, as well as the arguments of the parties. Based on all the evidence presented, the Court finds that the value of the Debtor's Property at 3304 Spinnaker Lane, #25, Detroit, Michigan, as of the petition date, was $55,000.00. This finding will govern further proceedings regarding confirmation of Debtor's Plan in this case.

**Signed on March 22, 2014**  /s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[12] This average is obtained after making the adjustments to Ms. Sampson's net adjustments described in the far-right column of the Court's table, above.